No. 49,117

STATE OF KANSAS, *Appellee,* v. KENNETH D. MAKIN, *Appellant.*

(576 P 2d 666)

Opinion filed April 1, 1978.

*Max Regier,* of Wichita, argued the cause and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause and *Stuart W. Gribble,* assistant district attorney, *Vern Miller,* district attorney, and *Curt T. Schneider,* attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a direct appeal from a conviction upon trial to the court wherein the defendant-appellant Kenneth D. Makin was found guilty of involuntary manslaughter (K.S.A. 21-3404). The facts are not in dispute. The information reads in part:

"[O]n or about the 4th of August, 1976, one KENNETH D. MAKIN did then and there unlawfully, wilfully [and] unintentionally kill a human being, to-wit: Jamie R. Reeves, without malice, while in the commission of an unlawful act not amounting to a felony, to-wit: operating a vehicle while under the influence of intoxicating liquor contrary to K.S.A. 8-1567 and driving a vehicle on the left side of the roadway contrary to K.S.A. 8-1514: all of said acts then and there committed being intentional, unlawful, and willful and being contrary to the statutes in such cases made and provided and being against the peace and dignity of the State of Kansas."

The defendant's motion to quash the information was overruled and the case proceeded to trial.

The sole issue in this appeal involves defendant's contention that the general statute relating to involuntary manslaughter (K.S.A. 21-3404), a class E felony, is superseded by a more specific statute on vehicular homicide (K.S.A. 21-3405), a class A misdemeanor, and thus he was improperly charged under the involuntary manslaughter statute.

A similar situation was before this court in *State v. Gloyd,* 148 Kan. 706, 84 P.2d 966, wherein we found that a negligent homicide statute did not amend or impliedly repeal manslaughter in the fourth degree, but rather negligent homicide was held to be a lesser offense of manslaughter in the fourth degree. However, that holding is no longer controlling as both statutes involved have been repealed and replaced by the statutes now involved in this appeal.

Manslaughter is now of two classes including involuntary manslaughter as set forth in K.S.A. 21-3404:

"Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner. As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state which statute or ordinance is enacted for the protection of human life or safety."

The old negligent homicide statute, G.S. 1949, 8-529, provided in part:

"(*a*) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in negligent disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

Cases under that statute interpreted it to apply to *ordinary* negligence on the part of the driver of the vehicle which proximately resulted in the death of another. (*State v. Miles,* 203 Kan. 707, 457 P.2d 166; see *State v. Champ,* 172 Kan. 737, 242 P.2d 1070.)

In 1969 the legislature replaced the negligent homicide statute with vehicular homicide, K.S.A. 21-3405, which now reads in part:

"(1)   Vehicular homicide is the killing of a human being by the operation of an automobile, airplane, motor boat or other motor vehicle in a manner which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances."

In 1972 it was amended by substituting "material" for "substantial." In *State v. Gordon,* 219 Kan. 643, 549 P.2d 886, we determined that the 1972 amendment was, in essence, no change at all and said:

"We think the Legislature meant something more than simple negligence when it defined the standard of conduct condemned under the vehicular homicide statute." (p. 654.)

Under the negligent homicide and manslaughter in the fourth degree statutes, now repealed, charges arising out of a homicide caused by the operation of a vehicle could be brought under either statute, with negligent homicide being a lesser included offense. (*State v. Miles,* supra; *State v. Gloyd,* supra.)

It is the defendant's contention that vehicular homicide, as the more specific statute on the subject of homicide caused by the operation of a vehicle, preempts the more general manslaughter statute.

Repeals by implication are never favored and a general and specific statute should be read together and harmonized wherever possible. But to the extent of repugnancy between a statute dealing generally with a subject and another statute dealing specifically with a subject, the specific statute is favored and controls. (*Seltmann v. Board of County Commissioners,* 212 Kan. 805, 512 P.2d 334; *State v. Kliewer,* 210 Kan. 820, 504 P.2d 580.)

Other jurisdictions split as to whether there is a repeal of an involuntary manslaughter statute based on criminal negligence by the more specific vehicular homicide statute. (See generally 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 291, pp. 837-838; Perkins on Criminal Law [2nd ed.], pp. 79-82.) However, the precise statutory language varies from jurisdiction to jurisdiction and the variations are so significant as to be of little value in resolving the issue herein.

K.S.A. 21-3201 provides:

"(1)   Except as provided by sections 21-3202, 21-3204, and 21-3405, a criminal intent is an essential element of every crime defined by this code. Criminal intent may be established by proof that the conduct of the accused person was willful or wanton. Proof of willful conduct shall be required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a wanton manner.

"(2)   Willful conduct is conduct that is purposeful and intentional and not accidental. As used in this code, the terms 'knowing,' 'intentional,' 'purposeful,' and 'on purpose' are included within the term 'willful.'

"(3)   Wanton conduct is conduct done under circumstances that show a realization of the imminence of danger to the person of another and a reckless disregard or complete indifference and unconcern for the probable consequences of such conduct. The terms 'gross negligence,' 'culpable negligence,' 'wanton negligence' and 'recklessness' are included within the term 'wantonness' as used in this code."

It is significant that, pursuant to this statute, a criminal intent is an essential element of involuntary manslaughter (K.S.A. 21-3404) but is expressly excluded as an element of vehicular homicide (K.S.A. 21-3405). Wanton conduct is sufficient to establish the requisite criminal intent. Gross negligence, culpable negligence, wanton negligence, and recklessness are specifically included within the term "wantonness."

Wanton conduct involves a *realization* of the *imminence* of *danger to the person of another* and a *reckless disregard* or *complete indifference* and *unconcern* for the probable *consequences of such conduct.*

Wanton conduct as so defined is not synonymous with operating a motor vehicle in a manner "which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances."

In determining whether particular conduct is wanton, each case must stand on its own footing as applied to the facts involved (*Hickert v. Wright,* 182 Kan. 100, 319 P.2d 152). Precise statements of what constitutes wanton or gross negligence are impossible. If the absence of negligence is white and gross negligence is black, then innumerable shadings of grey lie between. Using this analogy the legislature obviously seeks to exclude the pale grey areas from criminal responsibility. The appellant asks us to hold that, by excluding the pale grey areas from criminal responsibility, the legislature has reduced the penalty for the conduct in the black area.

The totality of the circumstances must be considered. Identical conduct under different circumstances may result in no criminal responsibility, vehicular homicide, or involuntary manslaughter. For example, let us assume that a person is operating his vehicle at 60 miles per hour on dry pavements on a sunny day with little traffic at 4:00 on a Tuesday afternoon and he strikes and kills a pedestrian crossing the road. This same set of facts could be (a) no responsibility if it occurred in a remote, sparsely populated area; (b) vehicular homicide if it occurred in a residential area; and (c) involuntary manslaughter in a posted school zone. Even within these classes additional facts would have to be supplied before a definitive statement could be made.

We cannot find that the legislature intended to reduce the penalty from a felony to a misdemeanor for a homicide caused by wanton conduct of the defendant by requiring material deviation from ordinary care in the offense of vehicular homicide. The contrary result would be totally illogical. For example, an intoxicated person operating a vehicle at 100 m.p.h. on the wrong side of the road who kills a person, then gets out of the vehicle and steals the dead person's wallet containing $52.00 would be guilty of a misdemeanor for the homicide and a felony for the theft.

The intent of the legislature not to totally exclude unintentional homicide arising from operation of a motor vehicle from the involuntary manslaughter statute is shown in K.S.A. 1977 Supp. 8-1005 which provides in part:

"(a) In any criminal prosecution for violation of the laws of this state relating to driving of a motor vehicle while under the influence of intoxicating liquor, or the commission of *vehicular homicide or manslaughter* while under the influence of intoxicating liquor, or in any prosecution for a violation of city ordinance relating to the driving of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the defendant's blood at the time alleged, as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance may be admitted and shall give rise to the following presumptions:" (Emphasis added.)

K.S.A. 8-1005 was amended by the 1976 Legislature to clarify how the percentage of alcohol should be computed but the legislature reenacted, unchanged, the portion of the statute above-quoted.

We therefore conclude that an unintentional homicide arising from the operation of a motor vehicle which resulted from wanton conduct (gross negligence) is included within involuntary manslaughter (K.S.A. 21-3404).

However, this result does not completely resolve the issue on appeal. Involuntary manslaughter additionally encompasses "the commission of an unlawful act not amounting to felony."

We held in *State v. Betts,* 214 Kan. 271, 519 P.2d 655, as follows:

"To sustain its case under this statute it was incumbent on the state to prove two elements: first, an unintentional killing; and second, that appellant was at the time either engaged in the commission of a misdemeanor or was operating his car in a wanton manner. . . ." (pp. 274-275.)

The problem herein is that it is virtually impossible to be negligent in the operation of a motor vehicle without committing a misdemeanor.

Articles 15, 16, 17, 18, and 19 of Chapter 8 of the Kansas Statutes contain a vast array of traffic-related offenses which are all misdemeanors pursuant to K.S.A. 8-2116.

We hold that, in the field of unintentional homicide by operation of a motor vehicle, the specific statute, vehicular homicide (K.S.A. 21-3405), is concurrent with and controls the general statute on involuntary manslaughter (K.S.A. 21-3404) except where the acts of the accused constitute wanton conduct (gross negligence). Accordingly, the issue in all such cases where the charge is involuntary manslaughter becomes whether or not the conduct of the defendant was grossly negligent. In virtually all cases, then, vehicular homicide would be a lesser included offense of involuntary manslaughter and the jury should be instructed thereon.

The trial herein was a bench trial. There was substantial competent evidence to establish that at the time of the homicide the appellant was operating his vehicle on the left side of the road and was under the influence of intoxicating liquor. There was sufficient evidence of wanton conduct to support the conviction of involuntary manslaughter.

The judgment is affirmed.