No. 50,820

STATE OF KANSAS, *Appellant,* v. CHARLENE F. RANDOL, *Appellee.*

(597 P.2d 672)

Opinion filed July 14, 1979.

*Leonard J. Dix,* county attorney, argued the cause and *Robert Stephan,* attorney general, was with him on the brief for appellant.

*Daniel C. Walter,* of Ryan, Kent, Wichman & Walter, of Norton, argued the cause and *John F. McClymont,* of the same firm was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by the State on a question reserved from a district court ruling that K.S.A. 21-3405 (vehicular homicide) is unconstitutionally vague and indefinite.

The appellee, Charlene F. Randol, was found not guilty after a trial to the court on two counts of vehicular homicide. She was found not guilty for two reasons: (1) that she was not guilty of more than simple negligence and (2) K.S.A. 21-3405 is unconstitutional as being vague and indefinite. The district court held that the words "material deviation", as used in the statute and as previously applied in decisions of this court, were so vague and indefinite that the statute violated the constitutional guarantees of due process. The State is not challenging the "not guilty" verdict

and the sole question on appeal is the constitutionality of the statute. Under these circumstances it is not necessary to recite the facts other than to state that appellee was the driver of an automobile involved in a two-car collision in which both occupants of the other vehicle were killed.

K.S.A. 21-3405 reads:

"**Vehicular homicide.** (1) Vehicular homicide is the killing of a human being by the operation of an automobile, airplane, motor boat or other motor vehicle in a manner which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances.

"(2) This section shall be applicable only when the death of the injured person ensues within one (1) year as the proximate result of the operation of a vehicle in the manner described in subsection (1) of this section.

"(3) Vehicular homicide is a class A misdemeanor."

In construing the constitutionality of a statute there are certain familiar rules to be followed:

"Long-standing and well established rules of this court are that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. (*State, ex rel., v. Fadely,* 180 Kan. 652, 658, 659, 308 P.2d 537; *Wall v. Harrison,* 201 Kan. 600, 603, 443 P.2d 266; *Moore v. Shanahan,* 207 Kan. 645, 651, 486 P.2d 506; and 16 Am.Jur.2d, Constitutional Law, § 175, pp. 399-401.)" *Leek v. Theis,* 217 Kan. 784, 792-793, 539 P.2d 304 (1975).

The vagueness test applicable to criminal statutes was set out in *State v. Kirby,* 222 Kan. 1, 563 P.2d 408 (1977):

"The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a commonsense determination of fundamental fairness." p. 4.

See also *Kansas City Millwright Co., Inc. v. Kalb,* 221 Kan. 658, 562 P.2d 65 (1977); *State v. Gunzelman,* 210 Kan. 481, 502 P.2d 705 (1972); *State v. Hill,* 189 Kan. 403, 369 P.2d 365 (1962).

The test, under Section 10 of the Kansas Bill of Rights, is the same as that applicable in determining whether a statute violates

the due process clause of the Fourteenth Amendment to the federal constitution and was analyzed and discussed in *State v. Hill,* 189 Kan. at 410-411:

"It is well recognized that in order to satisfy the constitutional requirements of due process, a state statute must be sufficiently explicit in its description of the acts, conduct or conditions required or forbidden, to prescribe the elements of the offense with reasonable certainty. The standards of certainty in a statute punishing for criminal offenses is higher than in those depending primarily upon civil sanction for enforcement. The offenses must be defined with appropriate definiteness. There must be ascertainable standards of guilt, but impossible standards of specificity are not required. Men of common intelligence cannot be required to guess at the meaning of the statute. The vagueness may be for uncertainty with respect to persons within the scope of the statute or in regard to applicable tests to ascertain guilt. The test is whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice. (*United States v. Cardiff,* 344 U.S. 174, 97 L.Ed. 200, 73 S.Ct. 189; *Cramp v. Board of Public Inst. of Orange County, Fla.,* 386 U.S. 278, 7 L.Ed.2d 285, 292, 82 S.Ct. 275; *Winters v. New York,* 333 U.S. 507, 92 L.Ed. 840, 68 S.Ct. 665; *Champlin Rfg. Co. v. Commission,* 286 U.S. 210, 76 L.Ed. 1062, 52 S.Ct. 559, 86 A.L.R. 403.)"

Another principle discussed in *State v. Gunzelman,* 210 Kan. 481, is particularly applicable to our current analysis:

"A statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. (*State v. Blaser,* 138 Kan. 447, 26 P.2d 593; *State v. Rogers,* 142 Kan. 841, 52 P.2d 1185; *State v. Carr,* 151 Kan. 36, 98 P.2d 393.) In creating an offense which was not a crime at common law the legislature must make the statute sufficiently certain to show what was intended to be prohibited and punished, otherwise it will be void for uncertainty. But reasonable certainty is all that is required, and liberal effect is always to be given to the legislative intent in view of the evil to be corrected. (*State v. Davidson,* 152 Kan. 460, 105 P.2d 876; *State v. Hill,* 189 Kan. 403, 369 P.2d 365, 91 A.L.R.2d 750.)" p. 484.

With the foregoing general principles in mind, we now turn to the question before the court. Are the provisions of K.S.A. 21-3405 so vague and indefinite that the statute is unconstitutional? We think not.

The predecessor to our present statute was the negligent homicide statute, K.S.A. 8-529, which read:

"**Negligent homicide; penalties.** (*a*) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in negligent disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

"(*b*) Any person convicted of negligent homicide shall be punished by imprisonment for not more than one year or by fine of not less than $100 nor more than $500, or by both such fine and imprisonment.

"(c) The commission shall revoke the operator's or chauffeur's license of any person convicted of negligent homicide."

This statute was repealed in 1969 with the adoption of K.S.A. 21-3405. The 1969 statute was identical with today's except the term "material deviation" in section (1) read "substantial deviation." The word substantial was changed to material in 1972.

A conviction under the present statute requires a finding that the defendant was guilty of conduct *"which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances."*

In *State v. Gordon,* 219 Kan. 643, 549 P.2d 886 (1976), we considered the 1972 amendment while determining the degree of negligence necessary to convict under this statute.

"We think the Legislature meant something more than simple negligence when it defined the standard of conduct condemned under the vehicular homicide statute.

"The vehicular homicide statute (K.S.A. 21-3405) was enacted in 1969 with the wording 'substantial deviation.' Whether its drafters intended this wording to mean something more than simple negligence need not be decided, because legislative action in 1972 provides a clearer indication of legislative intent. In 1972, legislation was introduced which would have amended the statute by changing 'creates an unreasonable risk of injury' to 'creates a risk of injury,' and by changing a 'substantial deviation' to 'a deviation.' As enacted, the legislation made only one change in the statute; 'substantial' was changed to 'material.' (L. 1972, Ch. 113, § 1.)

"We view the change made to the statute in 1972 to be, in essence, no change at all. 'Substantial' and 'material' have been construed as synonymous terms. *Lewandoski v. Finkel,* 129 Conn. 526, 29 A.2d 762. The Legislature was presented with language that would have clearly indicated only simple negligence was intended. The Legislature chose not to adopt such language. We conclude that the degree of negligence contemplated by the Legislature in K.S.A. 21-3405 is something more than simple negligence." p. 654.

In the case sub judice the trial court found that the words "material deviation" were so vague and indefinite that the statute was unconstitutional. While the statute in its present form no longer refers to negligence as the basis for the offense, the overwhelming majority of vehicular homicide statutes from other jurisdictions contain some express reference to "negligent conduct." Some require only "simple" negligence while others require "criminal" and "gross" negligence. Annot., 20 A.L.R.3d 473. Cases under our old negligent homicide statute interpreted it

to apply to *ordinary* negligence on the part of the driver of the vehicle which proximately resulted in the death of another. *State v. Champ,* 172 Kan. 737, 242 P.2d 1070 (1952); *State v. Miles,* 203 Kan. 707, 457 P.2d 166 (1969).

Even though "negligence" is not expressly mentioned in 21-3405, we have held that it is still the gravamen of the offense. *State v. Choens,* 224 Kan. 402, 580 P.2d 1298 (1978); *State v. Makin,* 223 Kan. 743, 576 P.2d 666 (1978). In *Makin* the defendant was convicted of voluntary manslaughter and appealed to this court asserting that the vehicular homicide statute, being a specific statute, superseded the general manslaughter statute. We held that it did except in cases of wanton conduct which was equated with gross negligence. This determination was amplified upon in *Choens.* It is now established that the "material deviation" required for a conviction under 21-3405 requires something more than ordinary or simple negligence yet something less than gross and wanton negligence. It was the necessity for this determination that the trial court found made the statute vague and indefinite and therefore unconstitutional.

It is true that no hard and fast rule can be stated that would set an obvious standard of conduct in every factual situation. No such standard is required. The fact that the prescribed standard of conduct in a criminal statute may be one of varying degree dependent upon the factual circumstances in each case does not make a criminal law unconstitutional. As Mr. Justice Holmes of the United States Supreme Court said in *Nash v. United States,* 229 U.S. 373, 57 L.Ed. 1232, 33 S.Ct. 780 (1913):

"[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure, according to the degree of danger attending it' by common experience in the circumstances known to the actor. 'The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw.' *Commonwealth v. Pierce,* 138 Massachusetts, 165, 178. *Commonwealth v. Chance,* 174 Massachusetts, 245, 252. 'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East P.C. 262. If a man should kill another by driving an automobile furiously into a crowd he might be convicted of murder however little he expected the result. See *Reg. v. Desmond,* and other illustrations in Stephen, Dig. Crim. Law, art. 223, 1st ed., p. 146. If he did no more than drive negligently through a street he might get off with manslaughter or less.

*Reg. v. Swindall,* 2 C. & K. 230; *Rex v. Burton,* 1 Strange, 481. And in the last case he might be held although he himself thought that he was acting as a prudent man should." p. 377.

The Supreme Court has also noted that there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls. However, this is not sufficient reason to hold the language too ambiguous to define a criminal offense. *Roth v. United States,* 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304 (1957).

The terms "ordinary or simple negligence" and "gross and wanton negligence" have been ingrained in our law for years and are now generally accepted and understood by the legal profession and the judiciary. It is no longer argued that such terms are so vague and indefinite that juries and courts cannot apply them to particular circumstances or facts. See PIK Civ. 2d 3.01—3.04 (1978). There are many terms now accepted as establishing reasonably definite standards of proscribed criminal conduct which are not explicit and are not subject to specific definition applicable to all possible factual situations. In *United States v. Henderson,* 121 F.2d 75, 76-77 (D.C. Cir. 1941), a statute which prohibited "the operation of any vehicle at an immoderate rate of speed or in a careless, reckless, or negligent manner, but not willfully or wantonly" was attacked on constitutional grounds. The court said:

"The mere fact that the specified standard of liability may be one of varying degree does not make a criminal law unconstitutional. Many of the most familiar terms of the law are of this character. Practically all the common-law definitions of crime contain such words and phrases; as, for example, malice aforethought, deliberation and premeditation, consent, specific intent, breaking and entering, taking and carrying away, from the person or in the presence, and false testimony material to the issue."

There is no limit to the terminology used in criminal cases which is not subject to specific definition which would apply to all facts and circumstances. A few that readily come to mind include: beyond a reasonable doubt; prudent man; greater weight of the evidence; clear and convincing evidence; a preponderance of the evidence; reasonable man; substantial rights; prejudicial error, etc. All such terms require the trier of the facts or the court on appeal to apply a general standard, not a specific one, to the circumstances in the particular case. In *State v. Wojahn,* 204 Ore. 84, 282 P.2d 675 (1955), the court in an extensive and compre-

hensive opinion reviewed the vehicular death statutes then in effect in many of the United States. Decisions are cited and quoted finding statutes constitutional which use such diverse and general terms as: "without due caution or circumspection"; "driving at a speed greater than is reasonable and proper"; "operation of a vehicle at an immoderate rate of speed"; "lack of due caution and circumspection"; "culpable negligence"; "driving in negligent disregard of the safety of others"; "exercising all reasonable care"; "reckless disregard"; and others.

In *Makin,* we recognized the difficulty in distinguishing "wanton conduct" (gross negligence) from "simple negligence".

"In determining whether particular conduct is wanton, each case must stand on its own footing as applied to the facts involved (*Hickert v. Wright,* 182 Kan. 100, 319 P.2d 152). Precise statements of what constitutes wanton or gross negligence are impossible. If the absence of negligence is white and gross negligence is black, then innumerable shadings of grey lie between. Using this analogy the legislature obviously seeks to exclude the pale grey areas from criminal responsibility. The appellant asks us to hold that, by excluding the pale grey areas from criminal responsibility, the legislature has reduced the penalty for the conduct in the black area.

"The totality of the circumstances must be considered. Identical conduct under different circumstances may result in no criminal responsibility, vehicular homicide, or involuntary manslaughter. For example, let us assume that a person is operating his vehicle at 60 miles per hour on dry pavements on a sunny day with little traffic at 4:00 on a Tuesday afternoon and he strikes and kills a pedestrian crossing the road. This same set of facts could be (a) no responsibility if it occurred in a remote, sparsely populated area; (b) vehicular homicide if it occurred in a residential area; and (c) involuntary manslaughter in a posted school zone. Even within these classes additional facts would have to be supplied before a definitive statement could be made." 223 Kan. at 746.

As we have indicated previously, a material deviation is such a departure from the ordinary standards of due care to amount to more than simple or ordinary negligence yet less than gross and wanton negligence. *State v. Choens,* 224 Kan. 402; *State v. Makin,* 223 Kan. 743. We have also held that material deviation is the same as substantial deviation. *State v. Gordon,* 219 Kan. 643. This court has found the qualifying term "substantial" to be reasonably definite as used in the phrase "real or substantial value." *State, ex rel., v. Fairmont Foods Co.,* 196 Kan. 73, 410 P.2d 308 (1966). The terms *material* and *substantial* have been considered in literally hundreds of appellate decisions involving innumerable factual circumstances and standards. See 26A Words and Phrases, pp. 209-294, and 40 Words and Phrases, pp. 757-853.

Material is a relative term which must be gauged by all the circumstances surrounding the transaction or event to which it refers. It imports a considerable amount in opposition to that which is inconsequential or small. It is serious as opposed to trivial or minimal. It is extraordinary as opposed to ordinary. It is major as opposed to minor. In short, when applied to the statute in question it is more than the everyday minimal departures from the ordinary standard of care required by our vehicle and traffic statutes and ordinances yet something less than the reckless disregard and complete indifference and unconcern which are inherent in the more serious offenses involving gross or wanton conduct. A driver of a vehicle exceeding the speed limit by 5 miles per hour would be in violation of the statute or ordinance establishing the same but would not be considered to be materially deviating from the standard. On the other hand a violation of exceeding the limit by 30 miles per hour, under certain circumstances such as in a school zone, might be a material deviation. We recognize that the use of synonyms and antonyms to define or describe a term in a criminal statute does not result in that degree of specificity that would be ideal; however, when the terms of the statute and the words used to define them are words of general usage, commonly known and understood by the public, they are sufficient to meet constitutional muster.

Each case must be considered upon its own set of facts and circumstances and each judge or jury must determine whether the alleged conduct constitutes such a deviation from the norm as to fall within the proscribed conduct. It was this duty that the trial judge in the instant case did not feel he could meet although he had no difficulty in finding the defendant was guilty of ordinary negligence and had departed from the required minimum standards of care. Likewise, he had no difficulty in determining that the actions of the defendant did not constitute wanton or willful negligence. If the facts had warranted it, we believe the court could also have determined that the conduct fell between these two extremes so as to constitute a violation of the statute.

In *State v. Ashton,* 175 Kan. 164, 262 P.2d 123 (1953), the constitutionality of the negligent homicide statute, G.S. 1949, 8-529 was considered. This court said:

"It is clear the legislature did not attempt to specify in detail the innumerable and variable circumstances, conditions, acts and omissions from which death might result from vehicular traffic. It undertook to enact a statute sufficiently broad to

encompass negligent acts and omissions of all kinds and character from which death ensued when committed in disregard of the safety of others. It is a police measure designed to protect the public from the constantly mounting death toll resulting from vehicular traffic. In order to prevent or decrease these direful results the law, of necessity, had to be broad and general in its reach.

.   .   .   .

"Manifestly, no legislature could accurately anticipate every possible circumstance or contingency which might arise and legislate specifically concerning it. That would be true concerning speed and all other factors which might become involved in highly dissimilar situations.

.   .   .   .

"Some offenses admit of much greater precision and definiteness than others and where possible statutes always should be framed with reasonable certainty. *Reasonable and not mathematical certainty is what the law requires. It appears the instant statute is about as definite and certain as the subject matter, the evil sought to be remedied, permits. That is the real test. Under such circumstances a police measure enacted for the safety of the public will not be nullified on the ground of constitutional invalidity. (State v. Rogers,* supra, [142 Kan. 841] p. 855, 857.)

"That traffic statutes based on general provisions prohibiting negligent, careless, reckless or willful and wanton conduct in disregard of the safety of others do not contravene the constitutional guarantee of due process or the tenth section of our bill of rights by reason of indefiniteness or uncertainty is established by the overwhelming weight of authority." pp. 170-172. (Emphasis added.)

As reasonable certainty is all that is required, we hold that the words "material deviation" as used in K.S.A. 21-3405 are not unconstitutional as being vague and indefinite when the standard proscribed therein is measured against the parameters of ordinary negligence on the one hand and gross and wanton negligence on the other.

The appeal is sustained.