No. 57,074

STATE OF KANSAS, *Appellant,* v. KENNETH L. BURRELL, *Appellee.*

(699 P.2d 499)

Opinion filed May 10, 1985.

*Robert T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *James D. Hall,* assistant district attorney, were on the brief for the appellant.

*Lee E. Parker,* of Wichita, and *Vern Miller,* also of Wichita, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by the prosecution from an order of the trial court dismissing and discharging the defendant at the close of the preliminary hearing. The defendant, Kenneth L. Burrell, was charged with two counts of involuntary manslaughter contrary to K.S.A. 1984 Supp. 21-3404.

The sole issue on appeal is whether the trial court erred in finding the crime of involuntary manslaughter was not committed because one of the elements—wantonness—was not present.

The facts disclosed at the preliminary examination, through the testimony of the three State's witnesses, were as follows: Around 10:30 p.m. on April 6, 1984, a pickup truck driven by the defendant ran a stop sign and struck a car driven by Steve Covert at the intersection of 103d Street and Rock Road just outside of Mulvane, Kansas, in Sedgwick County. The defendant had been traveling east along 103d Street and Covert had been traveling south on Rock Road. Julie Covert, a passenger in the car who was eight months pregnant, was thrown from the car and was pronounced dead at the scene. Both parties stipulated that the baby would have been viable at the time of its mother's death. Consequently, the defendant was charged with two counts of invol-

untary manslaughter. The information stated that he had unintentionally killed two human beings while in the "wanton commission of an unlawful act not amounting to a felony, to wit: failure to stop at stop sign as defined in K.S.A. 8-1528."

Steve Covert testified that he had been traveling along Rock Road at or below the speed limit of 55 m.p.h. Covert saw no lights as he approached the 103d Street intersection until the instant before the accident.

Connie Pickering, who was one of the two passengers in the defendant's pickup truck and was seated next to the defendant, testified that the stop sign was clearly visible as they crested a hill near the intersection. However, the defendant began to accelerate as they approached the sign. Pickering testified that she warned the defendant about the stop sign, but he either didn't hear her or ignored her, and continued accelerating while talking to the other passenger. She also testified that the defendant had been drinking beer while he drove, and had probably consumed at least three to four beers over the course of the evening. She said the defendant never mentioned, or appeared to be having, any mechanical difficulties with the pickup. Pickering said the pickup was almost out into the intersection before she saw the lights on the Covert vehicle.

Pickering testified that she had talked to the defendant after the accident while they were both in the hospital, and he had claimed the reason he had failed to stop was that the accelerator had been stuck. However, Pickering said that defendant's statements seemed strange because she doesn't remember that he ever attempted to apply the brakes. The police officer who investigated the scene testified that he found no skid marks that would have indicated the brakes were applied.

The police officer also testified about his observations as to the nighttime visibility at the intersection. He stated that from the top of the hill on 103d Street, the stop sign at the Rock Road intersection was clearly visible. Also, until a driver traveling east toward Rock Road reaches the stop sign, the view to the north is obscured by shrubs and a dirt bank; but once the driver reaches the stop sign there is a clear view to the north up Rock Road approximately one-half mile. The officer testified that the car and pickup apparently collided in the center of the intersection.

The officer also testified that he found numerous beer cans, both open and closed, in the cab of the pickup.

Following the presentation of the State's evidence at the preliminary hearing, the trial court heard arguments from both the State and the defendant regarding whether the State had shown that the defendant's actions were wanton within the meaning of K.S.A. 1984 Supp. 21-3404. In reaching its decision, the trial court stated:

"The Court has difficulty finding gross and wanton negligence in this case of a level or nature that in this Court's opinion would make it a proper case for trial under the involuntary manslaughter section, that being K.S.A. 21-3404, as charged. I feel that it's the mandate of the legislature that cases of this nature, regardless of the great loss and the seriousness of the death of two people, that this case is appropriately chargeable under K.S.A. 21-3405, which refers to the killing of human being by the operation of an automobile in a manner which creates an unreasonable risk of injury to the person or property of another in which constitutes a material deviation from the standard care which a reasonably—pardon me—which a reasonable person would observe under the same circumstances.

"The rules that apply in a case like this where it is charged as a felony and the Court finds that a section applies that is a misdemeanor—vehicular homicide is a class A misdemeanor—I am not permitted to bind him over on a misdemeanor, but I'm required to discharge the defendant and then the District Attorney will file whatever appropriate charges or take whatever other action they deem appropriate in this case."

Accordingly, the case was dismissed. The State has appealed from the dismissal pursuant to K.S.A. 22-3602(b)(2).

The nature and purpose of the preliminary examination was set out in *State v. Jones*, 233 Kan. 170, 660 P.2d 965 (1983), and reiterated in *State v. Green*, 237 Kan. 146, 697 P.2d 1305 (1985), and *State v. Huff*, 235 Kan. 637, 639, 681 P.2d 656 (1984), as follows:

"If from the evidence it appears to the magistrate that a crime has been committed and there is probable cause to believe the defendant committed a felony, the magistrate binds the defendant over for trial. . . . *State v. Ramsey*, 228 Kan. 127, 131-32, 612 P.2d 603 (1980).

"A preliminary examination differs from a trial. This court stated in *In re Mortimer*, 192 Kan. 164, 166, 386 P.2d 261 (1963):

" 'There is a difference between the quantum of proof essential to a binding over for trial and that required to convict at the trial. The guilt or innocence of a defendant is not adjudged at a preliminary examination, and it is not necessary that evidence upon which a defendant is held for trial should be sufficient to support a conviction. It is enough if it shows that an offense has been committed and that there is probable cause to believe the defendant is guilty.' " 233 Kan. at 172-73.

In this case, the trial judge found that the crime with which the defendant had been charged (involuntary manslaughter) had not been committed. K.S.A. 1984 Supp. 21-3404 provides:

"(a) Involuntary manslaughter is the unlawful killing of a human being, without malice, which is *done unintentionally in the wanton commission of an unlawful act not amounting to felony,* or in the commission of a lawful act in an unlawful or wanton manner.

"(b) As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state which statute or ordinance is enacted for the protection of human life or safety.

"(c) Involuntary manslaughter is a class D felony." (Emphasis added.)

It was clearly established through the evidence at the preliminary hearing that the defendant had committed an unlawful act not amounting to a felony, namely, running a stop sign contrary to K.S.A. 8-1528, which resulted in the unintentional killing of two human beings. Therefore, the only issue left for the trial judge to decide was whether the defendant acted wantonly—a necessary element of the crime. The trial judge found, as a matter of law, that the evidence did not establish "wantonness." He further found that "cases of this nature" are appropriately chargeable as vehicular homicide (K.S.A. 21-3405), which is a Class A misdemeanor.

Prior to 1979, the involuntary manslaughter statute required only that the unintentional killing occur during the commission of an unlawful act not amounting to a felony. The act did not need to be committed *wantonly.* However, following our decisions in *State v. Choens,* 224 Kan. 402, 580 P.2d 1298 (1978); and *State v. Makin,* 223 Kan. 743, 576 P.2d 666 (1978), the statute was amended to include the word "wanton." In *Choens,* quoting *Makin,* we held:

" '[I]n the field of unintentional homicide by operation of a motor vehicle, the specific statute, vehicular homicide (K.S.A. 21-3405), is concurrent with and controls the general statute on involuntary manslaughter (K.S.A. 21-3404) except where the acts of the accused constitute wanton conduct (gross negligence). *Accordingly, the issue in all such cases where the charge is involuntary manslaughter becomes whether or not the conduct of the defendant was grossly negligent.* In virtually all cases, then, vehicular homicide would be a lesser included offense of involuntary manslaughter and the jury should be instructed thereon.' " (Emphasis added.) 224 Kan. at 404.

Wanton conduct, as defined in K.S.A. 21-3201(3), is:

"[C]onduct done under circumstances that show a realization of the imminence of danger to the person of another and a reckless disregard or complete indifference and unconcern for the probable consequences of such conduct. The terms 'gross negligence,' 'culpable negligence,' 'wanton negligence' and 'recklessness' are included within the term 'wantonness' as used in this code."

In discussing the term in *State v. Makin*, 223 Kan. at 746, we said:

"Wanton conduct as so defined is not synonymous with operating a motor vehicle in a manner 'which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances.' [K.S.A. 21-3405 (vehicular homicide).]

"*In determining whether particular conduct is wanton, each case must stand on its own footing as applied to the facts involved (Hickert v. Wright, 182 Kan. 100, 319 P.2d 152). Precise statements of what constitutes wanton or gross negligence are impossible. . . .*

"The totality of the circumstances must be considered. Identical conduct under different circumstances may result in no criminal responsibility, vehicular homicide, or involuntary manslaughter. For example, let us assume that a person is operating his vehicle at 60 miles per hour on dry pavements on a sunny day with little traffic at 4:00 on a Tuesday afternoon and he strikes and kills a pedestrian crossing the road. This same set of facts could be (a) no responsibility if it occurred in a remote, sparsely populated area; (b) vehicular homicide if it occurred in a residential area; and (c) involuntary manslaughter in a posted school zone. Even within these classes additional facts would have to be supplied before a definitive statement could be made." (Emphasis added.)

*Makin* held that when the defendant is responsible for an unintentional killing in an automobile accident, he may be guilty of involuntary manslaughter if his conduct is shown to be grossly negligent or wanton. We specifically found that the vehicular homicide statute was not intended to supersede the involuntary manslaughter statute for killings resulting from automobile accidents.

Accordingly, we find "cases of this nature" can be appropriately charged as involuntary manslaughter provided there is at least some evidence that the defendant acted wantonly. In *State v. Zimmerman & Schmidt*, 233 Kan. 151, 660 P.2d 960 (1983), we stated that at a preliminary hearing "where the evidence tends to disclose that the offense charged was committed and the defendant committed it, the question is one for the jury to decide, even though the evidence is weak." 233 Kan. at 158.

In the present case, we have studied the record and find ample evidence from which a jury could conclude the defendant's

illegal act of speeding through the stop sign was committed wantonly. He was warned by a passenger in his vehicle of the stop sign they were approaching. The defendant knew, or should have known, that Rock Road was heavily traveled. (He lived nearby and we can assume he was a frequent user of the road on trips from Mulvane to Derby.) The defendant could easily have seen the stop sign from the crest of the hill on 103d Street. Because visibility at the intersection was limited, the defendant should have stopped so as to make sure no traffic was coming. Instead, the defendant actually increased his speed through the stop sign and made no attempt to stop. Although there were possible questions about whether the defendant had mechanical difficulties and whether one of the pictures taken at the scene showed skid marks, these are questions of fact for the jury. *State v. Jones*, 233 Kan 170, Syl. ¶ 4.

The existence of wantonness is a question of fact for the jury. We find that there was ample evidence from which a jury could conclude the defendant's acts were wanton. Therefore, the trial court erred in dismissing the charges against the defendant.

The judgment of the trial court is reversed and the case is remanded with directions to reinstate the complaint against Kenneth L. Burrell, and for further proceedings in conformity herewith.