(740 P.2d 113)

No. 60,123

STATE OF KANSAS, *Appellee*, v. DARYL S. GOODNOW, *Appellant*.

Petition for review denied October 6, 1987.

Opinion filed July 30, 1987.

*Donald R. Hoffman*, of Topeka, for the appellant.

*Micheal A. Ireland*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before ABBOTT, C.J., HERB ROHLEDER, District Judge, assigned, and CHARLES J. SELL, District Judge, assigned.

ROHLEDER, J.: This is an appeal by defendant Daryl S. Goodnow from a jury verdict finding him guilty of five counts of involuntary manslaughter. K.S.A. 1986 Supp. 21-3404.

The facts surrounding this case are centered around a two-vehicle accident which ended in tragedy.

On February 26, 1986, a pickup truck driven by Goodnow was involved in a collision with a Ford Bronco. Goodnow was driving north on Highway 75 in Jackson County when his truck collided with the Bronco. Dale and Nancy Edwards and their three children were killed; Goodnow suffered injuries and was hospitalized for four days.

Several witnesses testified they had seen Goodnow driving erratically before the accident occurred. Approximately one hour

after the accident, a blood sample was drawn and Goodnow's blood alcohol concentration was .07 percent.

Goodnow was charged with five counts of involuntary manslaughter. A jury found him guilty of all five counts, and he was sentenced to two to ten years of incarceration on each count, sentences to run consecutively. Goodnow appeals.

Goodnow raises a number of issues on appeal, the first and most involved being whether the trial court erred in submitting the case to the jury on the theory of involuntary manslaughter. Defendant claims that 21-3404 has been repealed by implication in cases of this nature by the passage of K.S.A. 1986 Supp. 21-3405a, aggravated vehicular homicide.

In 1984 the Kansas legislature passed and added to the criminal code aggravated vehicular homicide, 21-3405a. This statute became effective July 1, 1984. A search of the legislative history does not reveal the legislative intent for its passage. The criminal code now includes three statutes under which the State may prosecute the unintentional killing of a person: (1) involuntary manslaughter, 21-3404; (2) vehicular homicide, 21-3405; and (3) aggravated vehicular homicide, 21-3405a.

The involuntary manslaughter and vehicular homicide statutes were discussed most recently in *State v. Burrell*, 237 Kan. 303, 699 P.2d 499 (1985). The court, after discussing the term "wantonness," stated:

"*Makin* held that when the defendant is responsible for an unintentional killing in an automobile accident, he may be guilty of involuntary manslaughter if his conduct is shown to be grossly negligent or wanton. We specifically found that the vehicular homicide statute was not intended to supersede the involuntary manslaughter statute for killings resulting from automobile accidents.

"Accordingly, we find 'cases of this nature' can be appropriately charged as involuntary manslaughter provided there is at least some evidence that the defendant acted wantonly." 237 Kan. at 307.

In *Burrell*, the court concluded that the "existence of wantonness is a question of fact for the jury" and that the record in that case contained "ample evidence from which a jury could conclude the defendant's acts were wanton." 237 Kan. at 308.

The *Burrell* court did not discuss the aggravated vehicular homicide statute and whether it supersedes the involuntary manslaughter statute in automobile cases. The court, however,

found that the specific statute (vehicular homicide) is concurrent with and controls the general statute (involuntary manslaughter), *except* where the acts constitute wanton conduct. The vehicular homicide statute does not include the element of wantonness. With the enactment of the aggravated vehicular homicide statute, however, the legislature has included the element of wantonness in the specific statute when reckless driving is the unlawful act alleged. It appears that the exception established by the *Makin* court is no longer relevant; therefore, the specific aggravated vehicular homicide statute would be concurrent with and control the general involuntary manslaughter statute.

Goodnow was charged with the unintentional killing of five people while in the commission of two unlawful acts: (1) reckless driving a C misdemeanor, and (2) driving left of center, a traffic infraction. Reckless driving, included as an alternative violation, is the violation relevant to this case. Reckless driving is classified as a serious traffic offense, and is driving "in a willful or wanton disregard for the safety of persons or property" (K.S.A. 1986 Supp. 8-1566). Unlike the vehicular homicide statute, the aggravated vehicular homicide statute specifically addresses the unintentional killing of a person that results from *driving* in a *wanton* manner.

The legislature, however, has not made known whether it intended the specific aggravated vehicular homicide statute to be the sole statute under which the State may charge, when the killing of a person results from driving a car in a wanton manner.

Established rules of statutory construction were recently set forth in *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985), including the rule that "old statutes must be read in the light of later legislative enactments; an older statute must be harmonized with a newer one." In this case, the aggravated vehicular homicide statute is the newer and more specific statute. We hold, therefore, that the aggravated vehicular homicide statute duplicates the involuntary manslaughter statute in cases such as is presently before the court. The convictions are affirmed under the aggravated vehicular homicide statute and this matter is remanded to the trial court for resentencing.

The defendant next contends the trial court erred in allowing

the State to amend the information after the trial had commenced.

On the second day of the trial, the court, upon motion by the State, permitted amendment of the information as follows: "operating a vehicle in willful or wanton disregard for the safety of persons or property contrary to K.S.A. 8-1566, and/or driving a vehicle on the left side of the roadway contrary to K.S.A. 8-1514, in violation of K.S.A. 21-3404." (Emphasis added.)

Amendment of an information is permitted "at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." K.S.A. 1986 Supp. 22-3201(4).

We find the amended information was clear and unambiguous, and that defendant's rights were not prejudiced.

Defendant next contends the court erred in permitting the State to introduce evidence of defendant's blood alcohol level in the absence of evidence that it was relevant to the charges against him.

Over defendant's objection, the State offered evidence regarding defendant's blood alcohol level. The court permitted the testimony of the officer responsible for securing the blood sample and the chemist responsible for testing the sample. During the jury instruction conference, defendant's counsel objected to any instruction that would advise the jury to disregard that evidence. In response to that argument, the court stated:

"Upon reflection that evidence should have never been offered, should not have been admitted and that is the reason for that instruction so that instruction will stay."

Defendant asserts on appeal that the admission of the evidence and the jury instruction that the evidence should not be considered constitute reversible error.

The admissibility of evidence is generally within the discretion of the trial court and is determined on the basis of its relevance and connection with the accused and the crime charged. *State v. Jakeway*, 221 Kan. 142, Syl. ¶ 9, 558 P.2d 113 (1976).

An abuse of discretion exists only when no reasonable man would take the view adopted by the trial court. *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973). "Evidence that does not constitute a portion of the crimes charged is admissible

if there are some natural, necessary, or logical connections between the evidence and the inference or result which it is designed to establish." *State v. Gray*, 235 Kan. 632, 635, 681 P.2d 669 (1984). The results of the blood alcohol test are logically connected to defendant's general physical and mental condition at the time of the accident. Had the trial court admitted the evidence and not admonished the jury, defendant's rights would not have been prejudiced. Therefore, the trial court did not err in admitting the evidence and subsequently admonishing the jury to disregard it.

Next, the defendant claims the trial court erred in refusing to grant a mistrial after an unauthorized visit to the scene of the accident by jurors.

On the last day of the trial, defendant's counsel informed the court that at least two members of the jury had visited the scene of the accident; he then moved for a mistrial. The trial court overruled the motion, finding misconduct had occurred, but that the misconduct did not affect a material fact or issue in the case. The court initially denied counsel's request that the court conduct juror interviews but, upon reconsideration, the judge did question two jurors. Following the interviews, the court again stated that juror misconduct had occurred, but that defendant was not prejudiced.

The trial court may grant a mistrial if it finds that "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." K.S.A. 22-3423(c). Whether juror conduct, falling within the statutory grounds set forth above, requires declaration of a mistrial is a matter within the sound discretion of the trial court. *State v. Jakeway*, 221 Kan. at 148.

"In both civil and criminal cases, juror misconduct is not a ground for reversal, new trial, or mistrial unless it is shown to have substantially prejudiced a party's rights. The burden of proof is on the party claiming the prejudice." *State v. Wheaton*, 240 Kan. 345, 353-54, 729 P.2d 1183 (1986).

Defendant asserts the juror misconduct violates his Sixth Amendment right to confrontation. The Kansas Supreme Court addressed this contention in *State v. Arney*, 218 Kan. 369, 544 P.2d 334 (1975). In the *Arney* case, a juror drove to the scene of

the crime, investigated the area, timed the drive from the scene of the crime to the defendant's home and from there to defendant's work place, conveyed this information to the other jurors, and discussion ensued. The court found that "[t]he matter investigated by the juror and discussed with other members of the jury did not relate to a material issue in dispute." 218 Kan. at 372.

In the case at bar, a juror drove to the scene of the accident, turned around and stopped, and then left. He stated that he did not discuss his visit to the scene of the accident with anyone. Another juror, when questioned by the judge, stated he passed the scene of the accident on his way to Topeka to visit his mother who was in the hospital. He did not discuss going to the scene of the accident with anyone.

Following the interviews, the court stated:

"The Court finds based on what jurors had indicated to me this morning that this would not constitute a material matter that could prejudice the Defendant in this case. I'm not saying it is not jury misconduct, it is clearly jury misconduct but the question is as to whether it goes to a material matter and I believe that it doesn't."

Defendant has not sustained his burden of showing substantial prejudice. The jurors' conduct, though improper, was harmless beyond a reasonable doubt. The trial court's refusal to declare a mistrial was not an abuse of discretion.

The defendant next contends that the trial court erred in refusing to disqualify the Jackson County Attorney's office from prosecuting this case because of the financial interest of the assistant county attorney.

This case was prosecuted by the county attorney. The assistant county attorney, Dennis White, is also a partner with his father in White Law Offices. White made no appearance in the case at bar; however, the accident reconstruction expert who testified on the State's behalf during rebuttal was hired by his father to investigate the accident on behalf of the victims in anticipation of a civil action.

Defendant moved to disqualify the county attorney from prosecuting the case. The court denied the motion. Defendant contended in the trial court, and now contends on appeal, that the entire county attorney's office should have been precluded from prosecuting the case.

No Kansas cases are found which discuss the facts presented in this case. The determination of whether there is a conflict of interest or appearance of impropriety, however, lies within the discretion of the trial court. *State v. McKibben*, 239 Kan. 574, 581-82, 722 P.2d 518 (1986). The Kansas Supreme Court has exclusive jurisdiction to discipline lawyers for violations of the Code of Professional Responsibility. Rule 201, 235 Kan. cxxiv; *In re Estate of Richard*, 4 Kan. App. 2d 26, 31, 602 P.2d 122 (1979), *rev. denied* 227 Kan 927 (1980).

The county attorney informed the court that his assistant, Dennis White, had no involvement in the prosecution of the case, and White made no appearance on behalf of the State. It was also noted on the record that the county attorney had "no financial interest in or connection with prosecution of the civil matters that are being pursued by the office and firm of White and White."

Although the appearance of impropriety may exist, defendant has not demonstrated that his right to a fair trial was prejudiced. See *In re Estate of Richard*, 4 Kan. App. 2d at 31. There appears to have been no abuse of discretion by the trial court in its refusal to disqualify the entire Jackson County Attorney's Office.

Finally, the defendant contends that the trial court abused its discretion in sentencing the defendant to five consecutive prison terms.

With the finding made on the first issue, this issue is moot. Suffice it to say:

"[A] sentence imposed by a trial court will not be disturbed on the ground it is excessive, provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, or corrupt motive." *State v. Jennings*, 240 Kan. 377, 380, 729 P.2d 454 (1986).

Defendant's convictions are affirmed, but the case is remanded for resentencing under the aggravated vehicular homicide statute, K.S.A. 1986 Supp. 21-3405a.