(884 P.2d 434)
No. 71,159

STATE OF KANSAS, *Appellee*, v. ANTHONY JOHN TRCKA,
*Appellant*.

Opinion filed November 4, 1994.

*Michael B. Buser*, of Shook, Hardy & Bacon P.C., of Overland Park, for the appellant.

*David L. Miller*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before PIERRON, P.J., BRAZIL, J., and DAVID PRAGER, Chief Justice Retired, assigned.

PRAGER, C.J. Retired: Anthony John Trcka appeals his conviction of vehicular homicide, in violation of K.S.A. 21-3405, by the district judge sitting without a jury. The defendant maintains there was insufficient evidence for the judge to find that his driving was a material deviation from the standard of care which a reasonable person would observe under the same circumstances, which is required by the statute to prove vehicular homicide. He further maintains that the contributory negligence of the other driver was the proximate cause of the accident.

At the trial, there was substantial competent evidence presented to establish the following factual circumstances.

On September 3, 1992, Sheri Moore and Mike Buck, two employees of SEKAN Asphalt, were removing construction signs from the shoulder of a completed highway project just west of

the intersection of Old Kansas City Road and K-68 Highway in Miami County. Moore drove a pickup truck while Buck removed the signs. Buck would ride on the tailgate of the pickup, and as Moore pulled up to a sign, he would get out of the pickup and throw a sandbag and the sign into the bed, after which they would continue approximately 500 feet to the next sign. Buck estimated that they attained a speed of between 20 and 30 miles per hour between the signs.

According to Buck, the crew was instructed to stay off the dirt shoulders of the road, as they had been recently graded and were soft. Instead, the crew was instructed to stop in the road and pick up the signs. He testified that the half-ton pickup Moore was driving had a large orange sign with black lettering mounted on the back reading "Pilot Car Follow Me." The truck was also equipped with an amber flashing light mounted on top of the sign. Buck stated both the amber light and the hazard lights on the truck were on at the time of the accident.

Immediately west of Old Kansas City Road on K-68, there was a rectangular sign warning drivers of road construction. Another sign just west of the first sign warned drivers of road construction and a soft shoulder for the next 13 miles. Approximately one-twentieth of a mile from Old Kansas City Road on K-68, there was a 45 miles per hour speed limit sign.

Buck testified that he had just removed signs displaying the words "Construction Ahead" and "Be Prepared to Stop," when he noticed a semitrailer truck coming down K-68 from the direction of Old Kansas City Road. The driver of the truck was appellant Anthony John Trcka.

At the time Buck first noticed the truck, Buck and Moore were about 500 feet from it. They then proceeded approximately 500 feet to the next sign, which read "Do Not Pass." Buck noticed that the truck was still coming towards them and had not decelerated. At a distance of about 100 yards, he motioned for the truck to go around them. At this point, Moore had stopped the pickup at the sign and Buck continued frantically motioning to the truck to go around.

When the truck showed no signs of slowing, Buck banged on the side of the pickup to indicate that Moore should drive onward. He then leaped from the pickup bed. He stated the driver of the truck did not apply the brakes or attempt to swerve before hitting the pickup.

The impact of the collision sent both the truck and the pickup off the road and over an embankment. Both then caught fire and the pickup was engulfed in flames. Buck and Trcka attempted to pull Moore out of the truck, but were unsuccessful.

Trcka later told Kansas Highway Patrol Trooper Charles Krape that he was unsure of his speed at the time of the accident. When Krape asked if it was 50, 55, or 60 miles per hour, Trcka told him he thought he was going 50-55 miles per hour. Trcka told Krape that he had been traveling west on K-68 Highway, looked off to the left, and then came upon the pickup truck.

Trcka was charged with vehicular homicide. At the trial, the State introduced a videotape reenactment to show that vehicles at the point of impact are continually visible to vehicles travelling from Old Kansas City Road westward. On his behalf, Trcka called Charles Kellogg, a Miami County resident. Kellogg testified that he had seen the SEKAN pickup truck earlier in the day and that he did not recall seeing the flashing amber light operating.

At the conclusion of the evidence, the court found Trcka guilty as charged.

*Sufficiency of the Evidence to Prove Vehicular Homicide*

K.S.A. 21-3405(1) provides:

"Vehicular homicide is the killing of a human being by the operation of an automobile, airplane, motor boat or other motor vehicle in a manner which creates an unreasonable risk of injury to the person or property of another and which constitutes a *material deviation* from the standard of care which a reasonable person would observe under the same circumstances." (Emphasis added.)

Trcka argues the evidence was not sufficient to establish that his conduct constituted a material deviation from a reasonable standard of care. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, viewing all of the evidence in the light most favorable to the prose-

cution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Timley*, 255 Kan. 286, Syl. ¶ 13, 875 P.2d 242 (1994).

In *State v. Randol*, 226 Kan. 347, 597 P.2d 672 (1979), the Supreme Court discussed in depth the meaning of the words "material deviation from the standard of care which a reasonable person would observe under the same circumstances" required for a conviction of vehicular homicide under 21-3405 and held that the statute requires conduct amounting to something more than ordinary or simple negligence yet something less than gross and wanton negligence. The court then upheld the constitutionality of the statute, which the defendant argued was unconstitutional as being vague and indefinite.

Justice Holmes discussed the meaning of the term "material deviation," stating as follows:

"Material is a relative term which must be gauged by all the circumstances surrounding the transaction or event to which it refers. It imports a considerable amount in opposition to that which is inconsequential or small. It is serious as opposed to trivial or minimal. It is extraordinary as opposed to ordinary. It is major as opposed to minor. In short, when applied to the statute in question it is more than the everyday minimal departures from the ordinary standard of care required by our vehicle and traffic statutes and ordinances yet something less than the reckless disregard and complete indifference and unconcern which are inherent in the more serious offenses involving gross or wanton conduct. . . .

"Each case must be considered upon its own set of facts and circumstances and each judge and jury must determine whether the alleged conduct constitutes such a deviation from the norm as to fall within the proscribed conduct." 226 Kan. at 354.

In considering the evidence in this case, the trial judge quoted in the record the language in the *Randol* opinion stated above. The judge then applied the law to the facts of the case, summarizing some of the evidence which led to his decision. He mentioned the emergency four-way flashing light signals on the pickup, the large orange sign visible from the rear reading "Pilot Car Follow Me" in bold black letters, the amber flashing light attached to the top of the sign which was visible from the rear, Buck seated on the tailgate signaling to Trcka as he approached

with undiminished speed, the fact the truck never slowed its speed until the collision occurred, and the fact the pickup was stopped on the highway so signs could be picked up. The trial court also noted that when Trcka entered the construction area, he passed several signs warning drivers of the road construction, of the speed limit of 45 miles per hour, and to pass with care.

The evidence supports the conclusion that Trcka was travelling 50 to 55 miles per hour in a 45 miles per hour zone and that he did not see the clearly marked pickup until the impact, although the pickup was in full view from a distance of 1,320 feet, or one quarter of a mile.

We agree with the State that for a professional driver to be oblivious to his surroundings while propelling a semitrailer truck down a highway at 50 to 55 miles per hour is closer to reckless and wanton conduct than to simple negligence. Viewing all of the evidence in the light most favorable to the prosecution, we hold that a rational factfinder could have found that Trcka's conduct constituted a "material deviation" from the standard of care which a reasonable person would observe under the same circumstances.

### The Victim's Alleged Negligence as an Intervening Cause

Trcka next maintains that the district court erred in not finding that Moore was guilty of contributory negligence which was the superseding cause of the accident rather than Trcka's negligence. We hold this point to be without merit. Contributory negligence is not a defense to a prosecution for vehicular homicide. *State v. Gordon*, 219 Kan. 643, 653, 549 P.2d 886 (1976). However, it is a circumstance to be considered in order to determine whether Trcka's conduct was the proximate cause of Moore's death. See 219 Kan. at 653. Proximate cause is one of the elements which must be proved in order to convict a defendant of vehicular homicide. K.S.A. 21-3405(2).

Examining the evidence in the light most favorable to the State, a rational factfinder could have concluded beyond a reasonable doubt that Trcka's conduct was the proximate cause of Moore's death. Although Moore did make frequent stops in the middle of the highway, she did so in a marked construction zone, and

the pickup had both a flashing light and its hazard lights in operation at the time of the accident, as well as a worker signaling in the back of the truck. Based on these circumstances, the district court did not err in rejecting Trcka's contention that Moore's conduct was the proximate cause of the accident and her death.

The judgment of the district court is affirmed.