NOT DESIGNATED FOR PUBLICATION

No. 124,128

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID W. COLVIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Opinion filed May 27, 2022. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Garett C. Relph*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: David W. Colvin appeals the district court's denial of his presentencing motion to withdraw his plea to involuntary manslaughter based on what he claimed to be good cause. We find no error in the district court's ruling and affirm.

The events giving rise to Colvin's conviction occurred on an afternoon in August 2016, when a highway patrol trooper saw a pickup truck pulling a trailer that had no operable taillights and the driver, who was not using his seatbelt, failed to signal a lane change. The trooper activated his emergency lights and sirens. Rather than stopping, the pickup accelerated, failed to signal lane changes, and speed away. The trooper eventually

1

decided to end the pursuit because of traffic conditions, but the pickup continued to accelerate, failed to maintain a single lane of traffic, and failed to stop at a red light. Upon entering the intersection on the red light, the pickup struck and killed the victim who was proceeding through the intersection on a green light.

The trooper immediately arrived at the scene and apprehended Colvin, the driver of the pickup. Colvin's driver's license had been suspended and various stolen items were found in the vehicle. When asked why he attempted to elude the trooper, Colvin responded that it was because he had outstanding warrants. He did not attribute the collision to any failure of his brakes.

In November 2016, Colvin was charged with involuntary manslaughter and driving while suspended. Colvin had a series of three different attorneys representing him before his family hired attorney Fred Zimmerman.

In August 2017, Colvin waived his right to a preliminary hearing and was bound over for trial on involuntary manslaughter.

On January 23, 2018, about a week before the scheduled trial, the State moved to amend the primary charge to DUI manslaughter, a more severe person felony, and to reopen the preliminary hearing. The motion was based on the prosecutor having recently learned that Colvin had methamphetamine in his system at the time of the accident. The State also sought to endorse several additional witnesses that would have testified about the drug testing evidence. The district court conditionally granted the State's motion to amend the charges and to reopen the preliminary hearing.

Two days later, Colvin entered into a plea agreement with the State. He agreed to plead guilty to the original charge of involuntary manslaughter, and the State agreed to

2

dismiss other charges and to recommend a mid-box sentence with no request for a departure.

At the plea hearing that followed, after reviewing the plea agreement, the court asked Colvin whether anyone had threatened him to plead guilty. Colvin responded in the negative. Colvin told the court that he had gone over the terms of the written plea agreement with Zimmerman, that he had plenty of time to consider it, and that he understood the terms of the agreement. When asked about his satisfaction with counsel, Colvin expressed some dissatisfaction with previous counsel. But he said that he was satisfied with Zimmerman, who had "been perfect throughout this whole thing and I'm really happy with him." He said, "finally by the grace of the Lord Jesus Christ, thank you, we got Zimmerman."

Colvin's original defense counsel had been attorney Tina Cox-Vega. Colvin told the court that Cox-Vega had sent an expert to determine whether the brakes on Colvin's pickup truck had failed, but she had been removed from the case before the brakes on the pickup had been examined. In response to Colvin's concerns, the prosecutor suggested that defense counsel could "file for an expert and get the continuance of a trial date to check this out." Colvin immediately responded: "No. I want to go through with what we did today."

When asked for his plea to the involuntary manslaughter charge, Colvin responded: "That one I feel I was responsible, I feel my brakes went out, I hit the lady. It was an accident. I am guilty 100 percent." The State then provided the factual basis for the charge described earlier. When asked whether he had any disagreements with the proffered factual basis, Colvin told the court that he did. But after conferring with counsel, he agreed with his counsel's statement that he understood "that's what the facts would be. He may have disagreements if we went to trial, but that's what the facts would be." The court accepted Colvin's plea and found him guilty of involuntary manslaughter.

3

In March 2018, before sentencing, Colvin moved pro se to withdraw his plea, claiming (1) he was not served proper notice of the State's amended charges and was "ambushed" by finding out about the threatened increased charges; (2) defense counsel was not prepared and instead coerced Colvin into accepting the plea; (3) defense counsel had a conflict of interest; (4) Colvin was never allowed complete access to discovery; and (5) no attorney had conducted an adequate investigation into possible defenses related to the accident. He concluded that he was "unlawfully pressured to make an uninformed decision to enter into [the] plea agreement."

At the evidentiary hearing that followed, Colvin testified that he did not receive any discovery regarding possible drug tests until right before the plea proceeding, and that he felt "ambushed" when presented with the State's motion to amend the charges. He said that Zimmerman visited him in jail several times between July 2017 and September 2017. Zimmerman then met with Colvin three additional times in January 2018, shortly before his plea. Colvin testified that Zimmerman informed him that he would be facing a maximum sentence of up to 206 months in prison if convicted of the amended charge, which was a significant increase from the potential sentence of 130 months that he faced under the original charge. Colvin testified that he felt coerced to take the plea because if he did not take it, then the State would proceed on the amended charge and that "scared the crap" out of him.

Colvin acknowledged moral responsibility for the accident, but he claimed he did not believe he was criminally responsible for involuntary manslaughter. He testified that when he claimed at the plea hearing that he was "guilty 100 percent," he meant that he was guilty of the accident because his brakes had failed.

Zimmerman testified that he visited Colvin in jail on January 24, 2018. Zimmerman said that he told Colvin about the potential sentence he was facing under the

4

amended charge—up from a level 5 felony to a level 4 felony—and he believed this change of circumstance was what led to Colvin's plea. He also went over the terms of the plea offer, and he told Colvin that he would check back the next day and see what Colvin wanted to do. Zimmerman informed Colvin that he was ready and willing to take the case to trial if Colvin wanted to reject the plea deal. Zimmerman agreed that Colvin always maintained that his brakes had failed, and he informed Colvin and his family that they could have the brakes of his truck inspected if they wanted that done. Zimmerman denied threatening Colvin so that he would accept the plea, and he did not believe that Colvin was coerced into accepting the plea deal.

Zimmerman met with Colvin for a final time right before the plea hearing. Zimmerman testified that he asked Colvin if he was sure he wanted to enter the plea, and he "didn't perceive reluctance." Zimmerman also testified that he believed the State was not aware of the drug test evidence leading to the request to amend the charge until January 2018, and he did not believe that the State deliberately withheld any evidence.

The court denied Colvin's motion, finding that the State did not act improperly when it filed a motion to amend the charge after receiving the new evidence about the drug test. The court also found no evidence that Zimmerman coerced Colvin into entering the plea, but instead Zimmerman merely served as the messenger regarding the potential sentence of the amended charge. There was no conflict of interest in the case, discovery had not been withheld from Colvin, and Colvin turned down the opportunity to pursue additional investigation into the possibility that his brakes failed. Moreover, Colvin understood that the plea agreement significantly reduced his punitive exposure. The court found that Colvin was represented by competent counsel; that Colvin understood the terms of the plea agreement; that Colvin was not misled, coerced, or mistreated or unfairly taken advantage of; and that his plea was fairly and understandingly made.

5

At sentencing the court followed the plea agreement and imposed a mid-box prison sentence of 130 months. This appeal followed. Colvin contends on appeal that the district court abused its discretion in denying his motion to withdraw his plea.

Under K.S.A. 2020 Supp. 22-3210(d)(1), a plea may be withdrawn at any time before sentencing for good cause shown and within the discretion of the court. When determining whether a defendant has shown good cause, a district court should consider at least three factors: (1) was the defendant represented by competent counsel; (2) was the defendant misled, coerced, mistreated, or unfairly taken advantage of; and (3) was the plea fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). A claim of innocence might also support good cause. *State v. Garcia*, 295 Kan. 53, 63, 283 P.3d 165 (2012). Colvin relies on the second factor, claiming he was pressured and coerced into accepting the plea, and he also makes a claim of actual innocence.

In our review of the district court's decision, we must determine whether Colvin has shown that the district court abused its discretion in denying the motion. See *Frazier*, 311 Kan. at 381. The district court abuses its discretion if its action is arbitrary, fanciful, or unreasonable, or is based on an error of law or fact. *State v. Green*, 315 Kan. 178, 179-80, 505 P.3d 377 (2022). In our review, we do not reweigh the evidence or assess witness credibility. Instead, we defer to the district court's findings of fact that are supported by substantial competent evidence. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

Turning to the nonexclusive factors that affect a defendant's right to withdraw a plea, we find—consistent with the district court's findings and Colvin's praise of his counsel at the plea hearing—no evidence that Zimmerman was incompetent. Zimmerman properly informed Colvin of the terms of the plea and gave him the opportunity to accept the plea or reject the plea and proceed to trial.

6

As to the second element, there was no evidence that Colvin was misled, coerced, mistreated, or unfairly taken advantage of by Zimmerman or by the district court. Colvin claims that he was coerced because he was afraid of facing 206 months in prison, but this is a normal circumstance faced by a criminal defendant in weighing the potential risks and benefits of taking a plea. See *Brady v. United States*, 397 U.S. 742, 757-58, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).

Colvin also asserts he was coerced by the last-minute motion to amend the charge against him. But Colvin unequivocally indicated at the plea hearing that he was sure he wanted to proceed rather than reopen the preliminary hearing regarding the amended charge of DUI manslaughter. The State specifically offered to agree to a continuance of the trial to allow the defense time to get an expert if Colvin was reconsidering his plea, but Colvin declined and indicated that he wished to proceed. Under these circumstances, there was no coercion, as Colvin claimed, to warrant him withdrawing his plea. See *State v. Denmark-Wagner*, 292 Kan. 870, 876-77, 258 P.3d 960 (2011). During the plea colloquy, Colvin informed the court that he was not threatened or coerced, and that he was satisfied with Zimmerman's assistance in the case. A mere "change of mind" does not justify disturbing a plea without any evidence the plea "was made unwillingly or without an understanding of the consequences." 292 Kan. at 877. We find no evidence of coercion.

Colvin was thoroughly questioned by the court at the plea hearing regarding his plea, and Colvin expressed an understanding of the terms of the agreement and the decision he was making. The district court believed that Colvin understood the consequences of his plea. The Kansas Supreme Court has held that the district court is in the best position to observe the demeanor of a defendant and draw conclusions about whether the plea was knowingly and intelligently made. *State v. Macias-Medina*, 293

7

Kan. 833, 839, 268 P.3d 1201 (2012). We find that Colvin was given the information to make a knowledgeable decision, and he chose to proceed with the plea.

Finally, Colvin claims that the district court should have found good cause to withdraw his plea based on a claim of actual innocence. See *Garcia*, 295 Kan. at 63. He bases this claim on his assertion that the accident was caused by inattentive driving rather than by "recklessly" killing another human being as required by the involuntary manslaughter statute. See K.S.A. 2020 Supp. 21-5405(a)(1). Although Colvin maintained that the accident was caused by the failure of his brakes, he also said he was responsible for the accident and that he was "guilty 100 percent."

Colvin finds support in *State v. Krovvidi*, 274 Kan. 1059, 58 P.3d 687 (2002), in which a driver ran a red light and killed someone. We do not. In that case, the conviction for vehicular homicide was overturned based on a finding that inattentive driving, by itself, cannot support a finding of criminal negligence. 274 Kan. at 1075. Colvin's case is not predicated on inattentive driving. The district court found that "the overwhelming evidence, per the video, was that the defendant was fleeing from law enforcement, weaving in and out of traffic, speeding, committing traffic violations," and that he was under the influence of methamphetamine when the accident occurred. There was ample evidence that Colvin was acting recklessly—a predicate for involuntary manslaughter— when he struck and killed the victim.

Colvin also relies on *State v Trcka*, 20 Kan. App. 2d 84, 87-88, 884 P.2d 434 (1994), in which a panel of this court affirmed the defendant's conviction for vehicular homicide. In that case, the State presented evidence that the defendant drove a semitrailer at approximately 55 mph in a 45-mph zone, ignored flashing lights, and passed several warning signs before the accident. The Court of Appeals found that the defendant's conduct "constituted a 'material deviation' from the standard of care which a reasonable person would observe under the same circumstances." 20 Kan. App. 2d at 88. Colvin

suggests that because there were no flashing warning lights or additional signs of caution posted on the highway, the caselaw supports his claim that he was guilty only of inattentive driving. The defendant's crime in *Trcka* was vehicular homicide. Here, Colvin was convicted of involuntary manslaughter, which requires reckless conduct rather than simply a material deviation from the standard of care. There was overwhelming evidence that Colvin recklessly fled from police right before the accident. Moreover, Colvin had methamphetamine in his system at the time. Neither *Krovvidi* nor *Trcka* provide support for Colvin's claim that he showed good cause to withdraw his plea based on his claim that he is actually innocent of involuntary manslaughter.

We find no abuse of the district court's discretion in denying Colvin's motion.

Affirmed.